UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

CARMELO TRINIDAD JR. and VINCENT
SCOLA, individually and on behalf of
others similarly situated,                    O P I N I O N

                    Plaintiffs,               05 Civ. 4116 (RWS)

          v.

BREAKAWAY COURIER SYSTEMS, INC.,
TOM CROMWELL, ROBERT KOTCH,

                    Defendants.

----------------------------------------X

A P P E A R A N C E S:

MICHAEL SHEN & ASSOCIATES, P.C.
Attorney for Plaintiffs
225 Broadway, Suite 2515
New York, NY  10007
By:  MICHAEL SHEN, ESQ.

CLIFTON BUDD & DeMARIA, LLP
Attorneys for Defendants
Breakaway Courier Systems and
Robert Kotch
420 Lexington Avenue, Suite 420
New York, NY  10170-0089
By:  SCOTT M. WICH, ESQ.



**Sweet, D.J.,**

Plaintiffs Carmelo Trinidad, Jr. ("Trinidad") and Vincent Scola ("Scola") (collectively, the "Plaintiffs") have moved to circulate a Notice of Pendency and Consent to Join pursuant to 29 U.S.C. § 216(b) and for class certification pursuant to Rule 23(a) and (b)(3), Fed. R. Civ. P. Their motions are opposed by defendants Breakaway Courier Systems, Inc. ("Breakaway") and Robert Kotch ("Kotch") (collectively, the "Defendants"). For the reasons set forth below, the motions are granted.

## Prior Proceedings

Trinidad filed his complaint on April 25, 2005, alleging that the Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), by denying to Plaintiffs minimum wages and overtime compensation and that the Defendants violated New York labor law by making improper deductions and refusing to pay minimum wages and overtime compensation.

Plaintiffs ask the Court to authorize the sending of notice to potential members of a collective action under section 216(b) of the FLSA. With respect to their state-law claims, Plaintiffs Plaintiffs seek to certify a class consisting of all

1

persons seek to certify a class consisting of all persons employed by the Defendants as messengers who, at any time from April 26, 1999 (the "Class Period"), had money deducted from their pay for radio usage and were denied minimum wages and overtime pay in violation of New York labor law.

The instant motions were marked fully submitted on August 9, 2006.

**The Facts**

The named Plaintiffs and their counsel have submitted affidavits and class discovery has proceeded. The following facts have been set forth by the parties, are not disputed except as noted, and do not constitute findings by the Court.

Breakaway is a messenger service. The messengers of Breakaway are all non-management employees who function to make deliveries for customers, whether by bicycle, by motor vehicle or on foot. Trinidad began working as a messenger for Breakaway in December 1998, and Scola began in 1999. Messengers, including Plaintiffs, sometimes worked more than forty hours per week, but were not paid premium overtime compensation for their overtime work. Messengers were paid on a commission basis. On slow days, messengers would get very few packages to deliver, and thus would sometimes receive less than the legally required minimum wages.

2

Throughout and before the period the Plaintiffs were employed, the Defendants had a policy and practice of making allegedly illegal deductions from the wages of all messengers. These deductions included deductions for the use of company hand-held radios, the cost of bicycle repairs, and other unexplained reasons which were labeled "expenses" or "reimburse."

According to the Plaintiffs, during or around early February 2005, the New York State Attorney General ordered the Defendants to cease making deductions for the use of the radios. Thereafter, Defendants reduced the messengers' commissions by an amount equal to what had been previously called the "radio charge," and called this deduction a reduction in commission rather than a radio charge.

Since April 1999 to present, at any particular time, there were around 50 to 100 messengers working for Breakaway and the turnover was very high. Thus, during the Class Period, at least 1,600 messengers have worked for the Defendants.

Trinidad has told "any messenger I can find in the street that works currently at Breakaway" to join the lawsuit. (Trinidad Dep. at 10:2-7.) He has distributed flyers, including to members of the New York City Bike Messengers Association (id. at 55:25-56:17), and he sent a press release to news outlets

announcing the lawsuit (id. at 71:14-72:19), though the release was not printed.    (Trinidad Decl. of July 14, 2006, ¶¶ 3-5, attached as Ex. A to Shen Decl. of July 20, 2006).   At least one plaintiff, Scola, decided to join the lawsuit based on the notice efforts engaged in by Trinidad.   (Scola Dep. at 41:8-25.)

## Notice of the FLSA Collective Action Will be Given

Putative class members in a collective action brought under FLSA must opt-in in writing.    29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any action [under this section] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.")

As this Court has previously noted, "[D]istrict courts have ruled that they have discretionary power to authorize the sending of notices to potential class members in a collective action brought pursuant to the FLSA." El v. Potter, No. 01 Civ. 6125 (RWS), 2004 U.S. Dist. LEXIS 24447, at *32 (S.D.N.Y. Dec. 13, 2004) (citing Madrid v. Minolta Bus. Solutions, Inc., No. 02 Civ. 2294 (GOD), 2002 U.S. Dist. LEXIS 18539, at *1 (S.D.N.Y. Oct. 2, 2002); Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 305-06 (S.D.N.Y. 1998); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997)).   See also Patton v. Thomson Corp., 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005) ("A court may, but need not, authorize

4

such notification [pursuant to Section 216(b) of the FLSA . . ."); Prizmic v. Armour, Inc., No. 05 Civ. 2503 (DLI) (MDG), 2006 U.S. Dist. LEXIS 42627, at *4 (S.D.N.Y. June 12, 2006) ("It is well settled that district courts have the discretion whether to authorize the sending of notice to potential class members and direct an employer defendant to disclose the names and addresses of similarly situated potential plaintiffs in a collective action brought pursuant to section 216(b) of the FLSA.").

Whether circulation of a class notice under the FLSA should be authorized by the Court involves the consideration of whether the other members of the proposed collective action are "similarly situated." Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 U.S. Dist. LEXIS 4267, at *2 (S.D.N.Y. Feb. 2, 2006); Levinson v. Primedia, Inc., No. 02 Civ. 2222 (CBM), 2003 U.S. Dist. LEXIS 20010, at *1 (S.D.N.Y. Nov. 6, 2003); 29 U.S.C. § 216(b). While neither the FLSA nor its implementing regulations define the term "similarly situated," courts in this Circuit have held that plaintiffs can meet their burden on this point by "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). At this early stage of the litigation, Plaintiffs need only provide "some factual basis from which the court can determine if similarly situated plaintiffs exist." Jackson v. New York Telephone Co., 163 F.R.D. 429, 431

5

(S.D.N.Y. 1995) (quoting Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 376 (N.D.N.Y. 1995)).

> If the court finds that [the plaintiffs] are similarly situated, it may conditionally certify the class and authorize notice to be sent to putative class members. Only after discovery has been completed should the Court engage in a second more heightened stage of scrutiny to determine whether the class should be decertified or the case should proceed to trial as a collective action.''

Prizmic, 2006 U.S. Dist. LEXIS 42627, at *6.

Notice to putative class members should be given as soon as possible since, because of the statute of limitations, "potential plaintiffs may be eliminated as each day goes by." Foster v. Food Emporium, No. 99 Civ. 3860 (CM), 2000 U.S. Dist. LEXIS 6053, at *5 (Apr. 26, 2000).

The group of persons whom these Plaintiffs seek to notify about this collective action are or were messengers who worked for the Defendants at any time since April 26, 2002, and, according to the Plaintiffs, are "similarly situated" for FLSA purposes because the Defendants have a company-wide policy of denying messengers full and proper overtime pay as well as the minimum wage on certain days.

The Defendants have resisted the giving of notice on the grounds of Trinidad's prior efforts and deficiencies in the notice as initially proposed, but have not cited any authority in

6

this jurisdiction to support their position.    In Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433 (D. Va. 2002), cited by the Defendants, the plaintiffs had already made extensive efforts to contact persons the Court deemed similarly situated, including "extensive advertisements in newspapers," and the statutory time to opt-in had passed.  Here, Trinidad spent approximately one hour passing out fliers to approximately twenty-five to forty messengers during late March to early April 2005, no newspapers have carried any news about the case (Trinidad Reply Decl. at 3-5), and his outreach has netted one plaintiff, Scola, and the time to opt-in has not passed.

As to the form of the notice, the Plaintiffs have altered the proposed notice to meet the Defendants' objections by providing an opt-in date, identifying the representatives and proposing an opt-in form.   Additional changes proposed by the Defendants changing the terminology from "class" to "collective" action and providing that opt-in plaintiffs may be represented by their own attorneys are appropriate.    With such changes the proposed notice is approved.

While the statute of limitations for bringing claims under the FLSA is two years, or three years in the case of willful violations, notice to every person who has been employed by Breakaway as a messenger since April 26, 2002, as requested by plaintiffs, is appropriate in light of the early stage of the

7

litigation and the six-year statute of limitations on the related state-law claims.   Harrington v. Education Management Corp., No. 02 Civ. 0787 (HB), 2002 U.S. Dist. LEXIS 10966, at *5 (S.D.N.Y. 2002) (noting that it "would be premature at this juncture to reach a determination as to whether the defendants violations, if any, have been willful" and authorizing "notice to go back six years with respect to those similarly situated employees who worked in the defendants' New York facilities.").

## Rule 23 Class Certification is Granted

A class seeking certification must satisfy the four prerequisites set forth in Rule 23(a)(1)-(4), Fed. R. Civ. P., and then must establish that the proposed class action meets at least one of the standards enumerated at Rule 23(b)(1)-(3), Fed. R. Civ. P.

### Joinder of All Members Is Impracticable

Rule 23(a)(1) requires that the class must be "so numerous that joinder of all members is impracticable."   "While there are no rigid numerical guidelines for determining impracticability of joinder, courts have observed that generally less than 21 is inadequate; more than 40 is adequate; and numbers in between 21 and 40 are given varying treatment."   5 James Wm. Moore et al., Moore's Federal Practice § 23.22[3][a], at 23-63 (3d

8

ed. 1997). In the Second Circuit, "numerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

During the more than six-year period since April 26, 1999, at least 1,600 messengers have worked for Breakaway. These numbers establish numerosity. See Hirschfeld v. Stone, 193 F.R.D. 175, 182 (S.D.N.Y. 2000) (finding numerosity where plaintiffs estimated 150 to 170 class members); Jenson v. Eveleth Taconite Co., 139 F.R.D. 657, 664 (D. Minn. 1991) (finding numerosity in Title VII sexual harassment class action where 65 women had been employed, and at least 23 women had applied for employment during the class period); Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82, 89 (E.D.N.Y. 1989) ("One hundred forty-two members are clearly sufficient to satisfy the numerosity requirement").

The numerosity inquiry also looks to whether joinder of all members is ``impracticable." The Second Circuit has explained that "impracticable does not mean impossible" and noted that:

> [d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers. Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersions of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.

9

Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (internal citations omitted).  Here, the class includes former employees of Defendants "whose whereabouts may be difficult to ascertain." Tennie v. City of N.Y. Dep't of Soc. Servs., No. 83 Civ. 0884 (MEL), 1987 WL 6156, at *3-*4 (S.D.N.Y. Jan. 30, 1987); see also Hirschfeld v. Stone, 193 F.R.D. at 182 (noting that fluid nature of the class further supports finding of impracticability). Many of the class members also are "economically disadvantaged, making individual suits difficult to pursue."  Robidoux, 987 F.2d at 936. The proposed class includes messengers who currently work at Breakaway, and courts have noted in such circumstances that "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." Adames, 133 F.R.D. at 89.  Because the number of class members is sufficient and the circumstances do not leave joinder a practical alternative, the proposed class meets the Rule 23(a)(1) standard for numerosity.


### There Are Common Questions of Law and Fact


Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members.  Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members."

10

Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y.
1992) (internal citations omitted); see also Marisol A. ex rel.
Forbes v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) ("The
commonality requirement is met if plaintiffs' grievances share a
common question of law or fact." (citing In re Agent Orange Prod.
Liab. Litig., 818 F.2d 145, 166-67 (2d Cir. 1987)).

        According to the Plaintiffs, the questions of law and
fact common to all class members include, among others: (1) the
terms of employment regarding compensation (including overtime
pay, minimum wages, commissions, and deductions) due to class
members; (2) payment of commissions due; (3) compensation below
the minimum wage; (4) the denial of overtime; (5) deductions from
the pay of class members for radio use, bicycle repairs, and other
unexplained reasons; and (6) the existence of appropriate records
and evidence of work performed.  (Pls.' Mem. Supp. at 11.)

        To the extent that the claims of the Breakaway
employees differ - for instance, with respect to the amount of
deductions taken - these differences primarily affect damages, not
liability.  "It is well-established that individual questions with
respect to damages will not defeat class certification . . .
unless that issue creates a conflict which goes to the heart of
the lawsuit."  In re AM Int'l, Inc. Sec. Litig., 108 F.R.D. 190,
196 (S.D.N.Y. 1985).  Accordingly, the Court finds (and Defendants

have not contested) that the proposed class satisfies the commonality requirement of Rule 23(a)(2).

## The Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Second Circuit has held that, like commonality, typicality need not be complete for class certification to be proper:

> Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.

Robidoux, 987 F.2d at 936-37 (internal citations omitted); see also Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 155 (2d Cir. 2001); Marisol A., 126 F. 3d at 376. "The factual background of each named plaintiff's claim need not be identical to that of all of the class members as long as 'the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267 (S.D.N.Y. 2003) (quoting Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999) (alterations in original)).

12

"Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996). Furthermore, as in the commonality inquiry, "a difference in damages arising from a disparity in injuries among the plaintiff class does not preclude typicality." Duprey v. Conn. Dep't of Motor Vehicles, 191 F.R.D. 329, 337 (D. Conn. 2000) (citing Trautz v. Weisman, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994)).

Here, members of the proposed class were responsible for making deliveries to Breakaway's customers, allegedly were paid solely on a commission basis, were subject to a wage policy that, according to the Plaintiffs, ignored payment of minimum wages and overtime premiums, and were subjected to improper pay deductions for use of company radios, bicycle repair and other unexplained reasons. Because the named Plaintiffs' claims are typical of those of the proposed class and those of potential subclasses, the proposed class satisfies the typicality requirement of Rule 23(a)(3).

**The Named Plaintiffs Will Adequately Represent the Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."

13

This is a two-part inquiry. "Rule 23(a)(4) requires that plaintiffs demonstrate that 'class counsel is qualified, experienced, and generally able to conduct the litigation.' Plaintiffs also must demonstrate that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class." Marisol A., 126 F.3d at 378 (quoting In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992)).

The conflict of interest inquiry "merely requires that plaintiffs not have antagonistic interests, so only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." Martens v. Smith Barney, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (internal quotation marks omitted). As discussed above in the commonality and typicality inquiries, the named Plaintiffs' claims closely resemble those of the rest of the class, thus there are no antagonistic interests that go to the subject matter of the suit.

While not claiming that there is a conflict of interest, the Defendants have challenged the adequacy of the class representatives and class counsel on other grounds. The Defendants have claimed that Trinidad has "serious misunderstandings about the scope of this litigation and the claims being alleged," (Defs.' Mem. Opp. at 5), that Trinidad did not know the identity of Tom Cromwell, who is named as a defendant

14

(id. at 4), and that he mistakenly declared that the New York State Attorney General ordered Breakaway to change its pay practices (id. at 5). Regarding Cromwell, Trinidad has stated that he read the complaint (Trinidad Decl. of July 14, 2006, ¶ 6, attached as Ex. A to Shen Decl. of July 20, 2006), and had about as much information about Cromwell as did his attorney.[1]

As to the action of the New York State Attorney General, Trinidad has explained that he heard there was a letter from the Attorney General regarding payroll deductions, he learned on the website of the New York Attorney General that it was illegal to take a deduction from an employee's paycheck without authorization, and he called the Attorney General's office, where someone who did not identify himself said that there was an investigation of Breakaway and within about one week, Breakaway changed its policy of taking a deduction from messengers' pay for radios. (Trinidad Decl. of July 14, 2006, ¶ 7.) Trinidad neither has "serious misunderstandings" nor has he "asserted an alleged fact of which [he admits he has] no knowledge." (Defs.' Mem. Opp. at 5.)

The Defendants also have contended that Scola "has no understanding that he is asserting claims for minimum and overtime wages" (id. at 4), but omit Scola's acknowledgement and assertion

---

[1]     Defendants have denied that Cromwell is an owner of Breakaway, and he has not been served in this action. (Shen Decl. of July 20, 2006, ¶ 3.)

in his deposition of his overtime claim (Scola Dep. at 67:21-24) and his minimum wage claim (id. at 78:8-18.)

Referring to the alleged order by the Attorney General regarding pay deductions, the Defendants claim that "Scola . . . admits in his deposition that he is unaware of any such order." (Defs.' Mem. Opp. at 5.)  Scola has stated that he thought he was being asked if he had seen a physical piece of paper on which an order was printed, and answered with that in mind.  (Scola Decl. of July 18, 2006, ¶ 5, attached as Ex. A to Shen Decl. of July 20, 2006.)  Scola also has stated that he does remember reading the amended complaint, but felt so pressured at the deposition that he got confused.  He has claimed that he did not have a chance to read the deposition transcript to correct errors, and that if he had, he would have made the correction.  (Scola Decl. of July 18, 2006, ¶¶ 4, 6.)

Defendants have emphasized Scola's admission at deposition that he could not remember the names of any other foot messengers.  (Defs.' Mem. Opp. at 5.)  Scola has stated that he hardly knew the other two foot messengers, only saw them in passing, and had little opportunity to interact with them.  (Scola Decl. of July 18, 2006, ¶ 7.)   Remembering the names of other foot messengers is not a requisite for representation, and furthermore Scola seeks to represent not just foot messengers, but all messengers.

16

In light of the above, the named Plaintiffs do not have the serious deficiencies which were found to be disqualifying in Darvin v. International Harvester Co., 610 F. Supp. 255 (S.D.N.Y. 1985), and they will adequately represent the interests of the class.

As to the adequacy of counsel, Defendants have claimed that Plaintiffs' counsel has unduly delayed the action, has unnecessarily prosecuted two parallel actions regarding the claims at issue, and has improperly encouraged Trinidad to solicit additional plaintiffs. Plaintiffs have stated that their motion for authorization to provide notice to potential FLSA plaintiffs was made as soon as class discovery was complete. (Pls.' Rep. Mem. at 6.) After the Amended Complaint was filed, seven other former couriers asked to join the action. According to the Plaintiffs, Defendants refused to stipulate to a further amendment of the complaint to add their claims. Rather than waiting for a decision on a motion to amend, Plaintiffs' counsel filed a separate complaint title, Scola v. Breakaway Courier Systems, Inc., No. 06 Civ. 960 (RWS) (``Breakaway II''), since the statute of limitations would be tolled for the additional plaintiffs upon filing a complaint.[2] Plaintiffs have confirmed that counsel told

---

[2]    Due to a clerical error, Breakaway II was initially declined by this Court as a related case and assigned to the Honorable Kimba M. Wood.  That action was reassigned to this Court on November 15, 2006.

17

Trinidad that he should seek corroborating witnesses and ask others who had the same claims if they were interested in joining, but have denied that counsel suggested to Trinidad that he distribute and publish flyers.[3] (Trinidad Decl. of July 14, 2006, ¶ 8; Shen Decl. of July 20, 2006, ¶ 4.) In sum, it appears that Plaintiffs' counsel can adequately represent the proposed class.

## A Class Action May Be Maintained Pursuant to Rule 23(b)(3)

The Plaintiffs have sought certification of the proposed class pursuant to Rule 23(b)(3), which requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The proposed class satisfies the requirements of Rule 23(b)(3) for many of the reasons discussed above. See Rossini v. Ogilvy & Mather, Inc., 798 F. 2d 590, 598 (2d Cir. 1986) (holding that satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality"); Martens v. Smith Barney, 181 F.R.D. 243, 260 (S.D.N.Y. 1998) (same); In re TCW/DW N. Am. Gov't Income Trust Sec. Litig., 941 F. Supp. 326, 342-43 (S.D.N.Y. 1996). Generally, a Rule 23(b)(3) action is appropriate whenever the actual interests of the parties may be served best by settling their

---

[3]     Nor did counsel suggest, encourage, nor assist Trinidad regarding news releases nor electronic bulletin board.    (Shen Decl. of July 20, 2006, ¶ 4.)

18

differences in a single action. In re Frontier Ins. Group, Inc. Sec. Litig., 172 F.R.D. 31, 48-49 (E.D.N.Y. 1997).

The first prerequisite to bringing an action under Rule 23(b)(3) is that common questions of law or fact must predominate over the individual issues presented. Predominance is a measure of the cohesiveness of the class, and "will be established if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" Worldcom, 219 F.R.D. at 288 (quoting Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)).

Here, the resolution of the common questions of fact and law, enumerated above, can be achieved through generalized proof, and these issues are more substantial for each class member's case than the issues subject only to individualized proof. As in Worldcom, most of the overlapping and intertwined elements necessary to establish liability for the causes of action are common to the class.

The second criterion delineated in Rule 23(b)(3) is that the court find the class action to be superior to other available methods for the fair and efficient adjudication of the controversy. This analysis is closely related to that employed by

19

the court pursuant to Rule 23(a)(1) which requires a determination that the class is so numerous that joinder of its members is impractical. The large number of potential class members makes joinder impractical. Moreover, the judicial inefficiency of litigating hundreds of individual lawsuits demonstrates the merits of utilizing the class action device in this action.

The Defendants note that the opt-in procedure prescribed by section 216(b) of the FLSA provides each employee with the opportunity to receive notice of the lawsuit and independently make a decision as to whether to participate, and suggest that a class action, which automatically includes class members in the lawsuit unless they affirmatively opt-out, is not a superior means for handling these claims. In support of this proposition, Defendants have cited Muecke v. A-Reliable Auto Parts & Wreckers, Inc., 2002 U.S. Dist. LEXIS 11917 (N.D. Ill. June 25, 2002), Luethold v. Destination America, Inc., 224 F.R.D. 462 (N.D. Cal. 2004), and Bartelston v. Winnebago Industries, 219 F.R.D. 629 (N.D. Iowa 2003).

Courts in this Circuit, however, have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method. See, e.g., Lee v. ABC Carpet & Home, No. 00 Civ. 0984 (DAB), 2006 U.S. Dist. LEXIS 32511, at *202-*203 (S.D.N.Y. May 19, 2006); Mascol v. E&L Transp., Inc., No. 03 Civ. 3343 (CPS), 2005

20

U.S. Dist. LEXIS 32634, at *25-*26 (E.D.N.Y. June 29, 2005);
Schotisek v. Eldre Corp., 229 F.R.D. 381, 394 (W.D.N.Y. 2005).

In the Rule 23(b) context, it is the interest of
individuals - or the lack thereof - in controlling prosecutions
that courts tend to focus on in determining that class treatment
of state pendent claims is the superior way to litigate. Newberg
On Class Actions § 4:29, at 256-263 (4th ed. 2002). Where no
other claims or litigation regarding the allegations supporting
the state claims have arisen, courts have found that there is no
individual interest, and that, therefore, class treatment of the
state claims is superior. Newberg §4:30, at 265. In Mascol v.
E&L Transp., Inc., No. 03 Civ. 3343 (CPS), 2005 U.S. Dist. LEXIS
32634 (E.D.N.Y. June 29, 2005), a case with both FLSA and state
wage claims, the court found that class members would "have no
strong interest in individually controlling the litigation because
it is unlikely a class member would bring individual litigation
because the cost of an individual lawsuit likely would exceed any
overtime wage recovery." Id. at *24. According to the
Plaintiffs' estimate, the total maximum recovery in this action,
assuming the Plaintiffs prevail on all their claims, is
approximately $929,243, the total number of class members 1,658,
and the average claim approximately $560.[4] Additionally, as
previously noted, opt-out classes are commonly granted where, as
here, class members currently work for defendant and "the concern

---

[4] As discovery has focused thus far on class issues, the
liability and damages discovery has been limited.

21

for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." Adames, 133 F.R.D. at 89.

The Plaintiffs have met their burden of establishing the four prerequisites to a class action set forth in Rule 23(a) and demonstrating that the proposed class meets the requirements of Rule 23(b)(3). Accordingly, the proposed class will be certified.

## Conclusion

For the reasons set forth above, the motion to circulate a Notice of Pendency of a collective FSLA action and for class certification is granted.

It is so ordered.

New York, NY
January  / 2—, 2007

ROBERT W. SWEET
U.S.D.J.

22